FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 19, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JODI R. ORTEGA STARK,<br><br>    Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security,<br><br>    Defendant. | No. 2:17-CV-00019-RHW<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

    Before the Court are the parties' cross-motions for summary judgment, ECF Nos. 13, 20. Plaintiff Jodi R. Ortega Stark brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, which denied her application for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C §§ 401-434. After reviewing the administrative record and briefs filed by the parties, the Court is now fully informed. For the reasons set forth below, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Ms. Ortega Stark's Motion for Summary Judgment.

## I. Jurisdiction

Ms. Ortega Stark filed her application for disability insurance benefits on March 28, 2013. AR 190-203. Her alleged onset date is June 30, 2011 AR 199. Her application was initially denied on June 25, 2013, AR 125-27, and on reconsideration on December 31, 2013, AR 131-32.

Administrative Law Judge ("ALJ") Laura Valente held a hearing on June 18, 2015. AR 44-93. ALJ Valente issued a decision on August 24, 2015, finding Ms. Ortega Stark ineligible for disability benefits. AR 12-23. The Appeals Council denied Ms. Ortega Stark's request for review on November 8, 2016, AR 1-3, making the ALJ's ruling the "final decision" of the Commissioner.

Ms. Ortega Stark timely filed the present action challenging the denial of benefits on January 12, 2017. ECF No. 3. Accordingly, Ms. Ortega Stark's claims are properly before this Court pursuant to 42 U.S.C. § 405(g).

## II. Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant shall be determined to be under a disability only if the claimant's impairments are of such severity that the

claimant is not only unable to do his previous work, but cannot, considering claimant's age, education, and work experience, engage in any other substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4); *Lounsburry v. Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006).

Step one inquires whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b) & 416.920(b). Substantial gainful activity is defined as significant physical or mental activities done or usually done for profit. 20 C.F.R. §§ 404.1572 & 416.972. If the claimant is engaged in substantial activity, he or she is not entitled to disability benefits. 20 C.F.R. §§ 404.1571 & 416.920(b). If not, the ALJ proceeds to step two.

Step two asks whether the claimant has a severe impairment, or combination of impairments, that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) & 416.920(c). A severe impairment is one that has lasted or is expected to last for at least twelve months, and must be proven by objective medical evidence. 20 C.F.R. §§ 404.1508-09 & 416.908-09. If the claimant does not have a severe impairment, or combination of

impairments, the disability claim is denied, and no further evaluative steps are required. Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether any of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 & 416.920(d), 416.925, 416.926; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings"). If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits. *Id.* If the claimant is not *per se* disabled, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(e)-(f) & 416.920(e)-(f). If the claimant can still perform past relevant work, the claimant is not entitled to disability benefits and the inquiry ends. *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f), 404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c). To meet this burden, the Commissioner must establish that (1) the claimant is capable of performing other work; and (2) such work exists in "significant numbers in the

national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue*, 676 F.3d 1203, 1206 (9th Cir. 2012).

### III.   Standard of Review

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)). Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.1997) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)) (internal quotation marks omitted). In determining whether the Commissioner's findings are supported by substantial evidence, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)).

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). If the evidence in the record "is susceptible to more than one rational

interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Moreover, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina*, 674 F.3d at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115. The burden of showing that an error is harmful generally falls upon the party appealing the ALJ's decision. *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

## IV. Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings, and accordingly, are only briefly summarized here. Ms. Ortega Stark was born in 1954, graduated high school, and trained in cosmetology. AR 21, 467. Her prior work experience includes cosmetologist, instructor, general office clerk, and receptionist. *Id.*

## V. The ALJ's Findings

The ALJ determined that Ms. Ortega Stark was not under a disability within the meaning of the Act from June 30, 2011, through the date of the decision. AR 12-23.

**At step one**, the ALJ found that Ms. Ortega Stark had not engaged in substantial gainful activity since June 30, 2011, her alleged onset date (citing 20 C.F.R. §§ 404.1571 *et seq*.). AR 14-15.

**At step two**, the ALJ found Ms. Ortega Stark had the following medically determinable impairments: degenerative disc disease, an affective disorder, and an anxiety disorder (citing 20 C.F.R. §§ 404.1520(c)). AR 16.

**At step three,** the ALJ found that Ms. Ortega Stark did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. §§ 404, Subpt. P, App. 1. AR 16-17.

**At step four,** the ALJ found Ms. Ortega Stark had the following residual functional capacity: she can perform light work as defined in 20 C.F.R. § 416.967(b) including: (1) lift and/or carry up to 20 pounds occasionally and 10 pounds frequently; (2) sit for about six hours (with normal breaks); (3) stand and/or walk in combination for about six hours (with normal breaks); (4) frequently climb ramps, stairs, stoop, kneel, and crouch; (5) no limitations crawling; (6) occasionally climb ladders, ropes, and scaffolds; (7) avoid concentrated exposure to extreme could and hazards such as dangerous moving machinery, work at unprotected heights, etc.; (8) sufficient concentration to perform complex and detailed tasks; (9) maintain pace and concentration to do complex and detailed

work in two-hour increments for an eight-hour workday; and (10) need an additional 10-minute break in the workday besides the usual and customary breaks in two-hour increments. AR 17-21.

The ALJ also determined that Ms. Ortega Stark could perform her past relevant work as an instructor, a cosmetologist, a general office clerk, and a receptionist as actually and generally performed. AR 21.

**At step five,** the ALJ also found that in light of her age, education, work experience, and residual functional capacity, there are additional jobs that exist in significant numbers in the national economy that Ms. Ortega Stark can perform. AR 21-23. These include appointment setter, information clerk, data entry clerk, hotel clerk, and mail clerk. AR 22. The ALJ consulted a vocational expert and the Dictionary of Occupational Titles in making this determination. *Id*.

### VI. Issues for Review

Ms. Ortega Stark argues that the Commissioner's decision is not free of legal error and not supported by substantial evidence. Specifically, she argues the ALJ erred by: (1) improperly rejecting the opinions of Ms. Ortega Stark's medical provider Dr. Wayne C. Dees, PsyD; (2) improperly rejecting the subjective complaints of Ms. Ortega Stark; (3) failing to conduct an adequate step four analysis; and (4) in the alternative step five finding, failing to meet the burden to identify specific jobs available in significant numbers. ECF No. 13 at 6.

## VII. Discussion

### A. The ALJ did not err in evaluation of the opinions of Ms. Ortega Stark's medical providers.

The Ninth Circuit has distinguished between three classes of medical providers in defining the weight to be given to their opinions: (1) treating providers, those who actually treat the claimant; (2) examining providers, those who examine but do not treat the claimant; and (3) non-examining providers, those who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended).

A treating provider's opinion is given the most weight, followed by an examining provider, and finally a non-examining provider. *Id*. at 830-31. In the absence of a contrary opinion, a treating or examining provider's opinion may not be rejected unless "clear and convincing" reasons are provided. *Id*. at 830. If a treating or examining provider's opinion is contradicted, it may only be discounted for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id*. at 830-31. The ALJ may meet the specific and legitimate standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [his or her] interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal citation omitted).

Ms. Ortega Stark asserts that the ALJ erred by giving minimal weight to the opinion of Dr. Wayne C. Dees, PsyD, an examining physician. Dr. Dees performed a psychological evaluation on Ms. Ortega Stark on June 10, 2013. AR 468-72. In the evaluation, he performed a clinical interview and mental status examination and review some records. AR 468. The ALJ gave minimal weight to this opinion for multiple reasons that are supported by substantial evidence.

First, the ALJ noted that Dr. Dees found that it would be "unlikely" for Ms. Ortega Stark to return to competitive employment in the following twelve months. AR 472. This is directly contradicted by the record. Ms. Ortega Stark testified that she worked up through May 30, 2014. AR 53. Records indicate that she worked in 2013 and 2014 at Evergreen Beauty School. AR 327. This experience, even if Ms. Ortega Stark did eventually quit, supports the ALJ's finding that Dr. Dees' opinion was inconsistent with the record.

Dr. Dees also opined that Ms. Ortega Stark may "bolt from the workplace" if she felt panicked. AR 472. As the ALJ noted, there is nothing in the record to support this. AR 21. Dr. Dees found Ms. Ortega Stark to be "alert, friendly, and cooperate" and that "rapport was fairly easy to establish and maintain." AR 470-71. Her affect was full range, and Dr. Dees detected no psychotic symptoms. AR 471. While he found Ms. Ortega Stark to be an adequate historian, AR 470, and there was discussion of post-traumatic stress disorder, AR 472, there is no

discussion of time in which she bolted from her workplace in panic during her previous work experiences. To the contrary, Ms. Ortega Stark told Dr. Dees she left her position at Clovis Community College because her husband got ill and she needed to care for him. AR 470. As the record does not support the expectation that Ms. Ortega Stark may spontaneously bolt from the workplace as opined by Dr. Dees, it was not in error for the ALJ to use this in consideration of the opinion's reliability.

Finally, the ALJ did not err in finding that Dr. Dees' opinion inconsistent in that Ms. Ortega Stark could not return to competitive work despite finding her to have intact cognition. AR 21, 471. Dr. Dees noted that Ms. Ortega Stark had consistent pace and persistence, and her testing scores indicated intact cognition. AR 471. A conflict between a physician's notes and his opinion may constitute an adequate reason to discredit the opinion. *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014).

In sum, the ALJ's reasons for providing minimal weight to Dr. Dees' opinion is supported by substantial evidence in the record, and the Court does not find the ALJ erred.

**B. The ALJ did not err in assessing Ms. Ortega Stark's credibility.**

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective symptoms is credible. *Tommasetti v. Astrue,* 533

F.3d 1035, 1039 (9th Cir. 2008). First, the claimant must produce objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of the symptoms alleged. *Id.* Second, if the claimant meets this threshold, and there is no affirmative evidence suggesting malingering, "the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear, and convincing reasons for doing so." *Id.*

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen v. Chater,* 80 F.3d 1273, 1284 (9th Cir. 1996). Here, the ALJ found that the medically determinable impairments could reasonably be expected to produce the symptoms Ms. Ortega Stark alleges; however, the ALJ determined that her statements regarding intensity, persistence, and limiting effects of the symptoms were not entirely credible. AR 18-19.

Ms. Ortega Stark's level of physical activity is inconsistent with her allegations, and the ALJ explained this in her finding. AR 18. Despite allegations

that she has disabling back pain when standing or walking, she reported to Dr. Dees that she is involved in a "talk and walk" program and tries to walk for recreation multiple times per week. AR 18, 470. Consultative examiner Dr. Hayden Hamilton, M.D, reported that she could ambulate independently, had an unremarkable gait, could tandem walk and toe and heel walk, and was able to complete a full squat. AR 475-76. Ms. Ortega Stark also testified that she enjoys dancing. AR 79-80.

Also, Ms. Ortega Stark alleges that she must wear hand braces due to hand pain, but the record does not support this. For example, Dr. Hamilton noted that Ms. Ortega Stark was able to pick up small objects bilaterally without difficulty and could fold pieces of paper. AR 475. Moreover, her range of motion in her elbow, wrist, and finger/thumb joints were all within normal limits. AR 476. Additionally, despite claiming the need to wear the hand braces daily, Ms. Ortega Stark did not wear them to her hearing, in part because her hands were not hurting. AR 73-75.

In sum, the record supports the ALJ's credibility finding with regard to Ms. Ortega Stark's physical limitations.

Likewise, the record supports the ALJ's credibility finding with regard to Ms. Ortega Stark's mental limitations. AR 19. The ALJ noted her ability to represent herself in legal matters, contrary to allegations of disabling concentration

problems. *Id.* Additionally, the ALJ noted that Ms. Ortega Stark's symptoms improve with medication. AR 19. As the ALJ noted, despite struggling with mental health symptoms for most of her life, she has maintained a work history. AR 19, 220-21. Her history of working consistently with people as an instructor, AR 325-30, belies her assertions that she cannot get along with other people.

In sum, the ALJ provided multiple reasons that are substantially supported by the record to explain the adverse credibility finding. The Court finds no error.

**C. The ALJ did not err at steps four or five.**

Ms. Ortega Stark also argues that the ALJ failed to conduct a proper step four assessment by failing to properly account for all of her limitations in her residual functional capacity. First, she asserts that the ALJ failed to account for all of the limitations set forth by Dr. Dees. This, however, is just a repeated argument of an issue the Court has already addressed. *See supra* at pp. 10-11.

Ms. Ortega Stark additionally asserts that the ALJ did not account for the findings on x-rays and conduction studies. While the record shows mild osteoarthritis based on hand x-rays in 2014, there are no recommendations for management or limitations opined by the treating physician. AR 637. Likewise, Dr. Lee-Loung Liou, M.D., Ph.D., found some abnormalities in Ms. Ortega Stark's hands on January 26, 2015, but Dr. Liou did not provide any limitations or consequences of these findings. AR 806. Moreover, the record also indicates that

Ms. Ortega Stark was able to pick up small objects bilaterally and fold paper, both without difficulty. AR 475. Ms. Ortega Stark also stated that she needed hand braces due to hand pain, but she did not wear these to her hearing, in part because her hands were not painful. AR 73-75.

Ms. Ortega Stark also argues that the ALJ erred by failing to list the specific demands of Ms. Ortega Stark's relevant work and compare them to her limitations set forth in her residual functional capacity. ECF No. 13 at 18. The ALJ, however, provided Ms. Ortega Stark's age, education, previous work experience, and residual functional capacity to the vocational expert, who testified that Ms. Ortega Stark could perform her past relevant work as actually and generally performed. AR 21, 86-87. As the Court finds no error with the calculated residual functional capacity, the ALJ did not err by relying on the opinion of the vocational expert to reach her conclusion. *See Magallanes*, 881 F.2d at 756.

Ms. Ortega Stark, however, also argues that the vocational expert's opinion was unreliable because it was based on an incomplete hypothetical. This is nothing more than an attempt to re-litigate the alleged errors in the residual functional capacity. The Court will uphold the ALJ's findings when a claimant attempts to restate an argument that the residual functional capacity finding did not account for all limitations. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

# VIII. Conclusion

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free from legal error. Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **DENIED.**

2. Defendant's Motion for Summary Judgment, **ECF No. 20,** is **GRANTED.**

3. The District Court Executive is directed to enter judgment in favor of Defendant and against Plaintiff.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel and **close the file**.

**DATED** this 19th day of January, 2018.

*s/Robert H. Whaley*
ROBERT H. WHALEY
Senior United States District Judge
